UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT FEDUNIAK, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>OLD REPUBLIC NATIONAL TITLE COMPANY,<br><br>  Defendant. | Case No. 13-cv-02060-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND** ***SUA SPONTE*** **GRANTING PLAINTIFFS LEAVE TO AMEND**<br><br>[Re: ECF 38] |

Plaintiffs Robert and Maureen Feduniak ("the Feduniaks") claim that Defendant Old Republic National Title Company ("Old Republic") has breached a title insurance policy issued in connection with the Feduniaks' purchase of a home in Pebble Beach, California. Old Republic seeks partial summary judgment. The Court has considered the briefing and the oral argument presented at the hearing on October 30, 2014. For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Old Republic's motion and *sua sponte* GRANTS the Feduniaks leave to amend their pleading.

**I.   BACKGROUND[1]**

In November 2000, the Feduniaks purchased a home located on 17-mile Drive in Pebble Beach, California for $13 million. In connection with that purchase, they bought a standard coverage California Land Title Association ("CLTA") title insurance policy[2] ("the policy") from

---

[1] The facts set forth in the Background section are undisputed by the parties.

[2] In general, there are two types of title insurance policies available in California – CLTA policies and American Land Title Association ("ALTA") policies. *Liberty Nat'l Enters., L.P. v. Chicago*

Old Republic in the amount of $13 million. *See* Policy, Pls.' Exh. 1, ECF 62. Generally, the policy insures the Feduniaks against loss sustained by reason of a defect in the title to the property. *Id.* Section 4(a) of the policy's Conditions and Stipulations (hereinafter "§ 4(a)") also requires Old Republic to provide the Feduniaks with a litigation defense in the event that a third party asserts a claim adverse to the Feduniaks' title to or interest in the property. *Id.* § 4(a). Section 4(b) of the policy's Conditions and Stipulations (hereinafter "§ 4(b)") grants Old Republic the right to institute litigation or take other action to establish the Feduniaks' title to or interest in the property, or to prevent or reduce loss to them. *Id.* § 4(b).

*Discovery of Title Defect*

In August 2001, the Feduniaks learned of a title defect: an open space easement recorded in favor of the California Coastal Commission in 1983 ("the easement"). Robert Feduniak Decl. ¶ 8, ECF 60. The easement requires that 86% of the property be maintained as native dune habitat. At the time the Feduniaks purchased the property, it contained a golf course that was not compliant with the easement. On September 12, 2001, the Feduniaks submitted a policy claim to Old Republic based on the easement. Robertson Decl. ¶ 3, ECF 41. Old Republic accepted coverage of the claim and indicated its intent to hire an appraiser to conduct a diminution in value analysis to determine the amount of loss caused by the easement. *Id.* ¶¶ 4-5. The Feduniaks requested that Old Republic defer the appraisal while they negotiated with the Coastal Commission for removal of the easement. *Id.* ¶ 6. Old Republic agreed to defer the appraisal and to fund the negotiations. *Id.*

*Coastal Commission's Orders*

The negotiations were unsuccessful. Robertson Decl. ¶ 7, ECF 41. In early 2003, the Coastal Commission gave the Feduniaks notice that it intended to commence administrative proceedings for the purpose of issuing cease and desist and restoration orders that would require

---

*Title Ins.*, 217 Cal. App. 4th 62, 75 (2013). "CLTA policies insure primarily against defects in title that are discoverable through an examination of the public record." *Id.* at 76. "ALTA policies . . . provide greater coverage in that they also insure against off-record defects, including rights of parties in possession and not shown on the public records, water rights, and discrepancies or conflicts in boundary lines and shortages in areas that are not reflected in the public record." *Id.*

removal of the golf course. *Id.* Old Republic agreed to pay the Feduniaks' costs in defending against that administrative proceeding. *Id.* On July 21, 2003, following an administrative hearing, the Coastal Commission issued Cease and Desist Order No. CCC-03-CD-09 ("Cease and Desist Order"), which directed that "all persons subject to this order shall, within 60 days of its issuance, cease all maintenance of the unpermitted golf course, including watering and mowing the grass turf." Adopted Findings For Cease and Desist and Restoration Orders at 15, ECF 80.[3] On the same date, the Coastal Commission issued Restoration Order CCC-03-RO-07 ("Restoration Order"), which directed that "[w]ithin 60 days of issuance of this Restoration Order, Respondents shall submit for the review and approval of the Executive Director of the Commission a Restoration and Revegetation Plan." *Id.* The Restoration Order specified that the original approved building plans and landscaping plan for the property, dated July 28, 1983 and August 15, 1983, respectively, "shall serve as the template for preparing an updated plan." *Id.* The Feduniaks were to restore topography within thirty days after plan approval by the Executive Director of the Coastal Commission, and they were to revegetate using native plants within ninety days of plan approval. *Id.* at 16. They were to submit reports documenting the restoration of the topography and the vegetation. *Id.* at 15-16.

*Feduniaks' Lawsuit against the Coastal Commission*

At the Feduniaks' request, Old Republic agreed to fund a mandamus action challenging the Cease and Desist Order and Restoration Order. Robertson Decl. ¶ 9, ECF 41. The Feduniaks prevailed in the Monterey County Superior Court, but lost on appeal in a published decision filed March 27, 2007. *See Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346 (2007). On June 20, 2007, the California Supreme Court denied the Feduniaks' petition for review, rendering final

---

[3] At the hearing, the Court requested that it be provided with copies of the California Coastal Commission's Cease and Desist Order and Restoration Order referenced throughout the parties' briefing and in the Feduniaks' complaint. The Feduniaks' counsel thereafter submitted to chambers a document entitled "Adopted Findings for Cease and Desist and Restoration Orders," documenting the administrative proceedings before the California Coastal Commission and the ultimate issuance of the Orders. At the Court's direction, that document was filed as ECF 80. The Court considers the document as part of the record under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (under incorporation by reference doctrine, a court may consider a document that is referenced in a complaint but not physically attached thereto, so long as no party questions the document's authenticity).

3

1  the Cease and Desist Order and the Restoration Order.

*Coastal Commission's Lawsuit against the Feduniaks*

After its Orders became final, the Coastal Commission gave the Feduniaks notice of its intent to enforce the Orders. By letter dated January 24, 2008, the Coastal Commission granted the Feduniaks' request for an extension of time until February 4, 2008 to comply with the provision of the Restoration Order requiring submission of a restoration and revegetation plan. Jan. 28, 2004 Letter, Pls.' Exh. 10, ECF 66. On February 4, 2008, the Feduniaks submitted a plan via email that provided for removal of the golf course. Feb. 4, 2008 email, Pls.' Exh. 12, ECF 66; Bridges Dep. 57:3-24, Martin Decl. Exh. 3, ECF 47. The email indicated that the Feduniaks were continuing to explore off-site restoration opportunities that might be acceptable in lieu of total removal of the golf course. Feb. 4, 2008 email, Pls.' Exh. 12, ECF 66. On February 19, 2008, the Feduniaks submitted an alternative plan that provided for restoration of other, off-site property in exchange for partial retention of the golf course. Feb. 19, 2008 Letter, Pls.' Exh. 14, ECF 67.

It appears that more than two years passed without action by the Coastal Commission on either the February 4 plan or the February 19 plan. *See* Correspondence, Pls.' Exhs. 16-23, ECF 67. During that time, the Feduniaks continued to pursue the possibility of restoring other lands in lieu of completely removing the golf course from the property. Pls.' Exh. 22-23, ECF 67. The Commission ultimately declined to approve anything other than total removal of the golf course and total restoration of the property to native due habitat. Bridges Decl. ¶ 11, ECF 59.

On October 25, 2010, the Coastal Commission filed suit against the Feduniaks in the Monterey County Superior Court, asserting a single cause of action for "Violation of the Coastal Act – Violation of the Cease and Desist and Restoration Orders." Coastal Comm'n Compl. at 6, ECF 50. The Commission alleged that "[t]he Feduniaks have failed, and continue to fail, to comply with the requirements of the Commission's final cease and desist and restoration orders in a timely manner." *Id.* ¶ 23. The Commission also alleged that "[t]he Feduniaks' failure to timely comply with the Commission's final cease and desist and restoration orders has been, and is, knowing and intentional." *Id.* The Commission sought injunctive relief, civil penalties for violation of its Orders, exemplary damages, and attorneys' fees and costs. *Id.* at 7.

While its lawsuit was pending, the Coastal Commission approved a revised restoration plan providing for removal of the golf course and revegetation of the property. The Coastal Commission nonetheless declined to dismiss its lawsuit, and in early 2012 went to trial on its requests for more than $25 million in penalties, exemplary damages, attorneys' fees, and costs. Cameron Decl. ¶ 3, ECF 58; Bridges Decl. ¶ 13, ECF 59. After the Commission completed presentation of its evidence, the trial court granted the Feduniaks' motion to dismiss all claims except a claim relating to watering and mowing. Cameron Decl. ¶ 3, ECF 58. The parties then agreed to a settlement under which the Feduniaks made a donation to the City of Pacific Grove dune enhancement project in return for the Commission's dismissal of the action. *Id.*

The Feduniaks did not initially tender the defense of the Coastal Commission action to Old Republic. Robertson Decl. ¶ 11, ECF 41. The parties dispute precisely when Old Republic became aware of the action. Old Republic requested and was provided a copy of the Coastal Commission complaint in September 2011. *Id.* ¶ 12. The Feduniaks' counsel verbally tendered the defense of the Coastal Commission action to Old Republic in January 2012.[4] *Id.* ¶ 14. Old Republic rejected the tender by letter dated February 9, 2012. *Id.* ¶ 15 and Exh. 6. In July 2012, the Feduniaks' counsel sent Old Republic a letter asserting that it had a duty to defend the Coastal Commission action and to reimburse the Feduniaks for their defense costs. Long Decl. ¶ 4 and Exh. 1, ECF 40. Old Republic responded by letter dated August 17, 2012, quoting § 4(a) and taking the position that the Coastal Commission action did not give rise to a duty to defend under that section. *Id.* ¶ 5 and Exh. 2.

*Payment for Diminution in Value*

In October 2012, Old Republic retained an independent appraiser to determine the diminution in value caused by the easement. Gutzman Decl. ¶ 2, ECF 42. The appraiser determined that the diminution in value was $100,000. *Id.* ¶ 3. On November 16, 2012, Old Republic paid the Feduniaks $100,000, and informed them that the check could be cashed without

---

[4] The Feduniaks concede that they did not tender the defense of the Coastal Commission action to Old Republic until January 2012, but as discussed below, they contend that tender was not necessary to obligate Old Republic to pay the defense costs for that action.

5

waiver of any claims asserted under the policy. Long Decl. ¶ 7 and Exh. 4, ECF 40. In January 2013, the Feduniaks sent Old Republic an appraisal report opining that the diminution in value caused by the easement was $2 million. *Id.* ¶ 9. Old Republic responded by letter informing the Feduniaks that because of the disagreement regarding diminution in value, Old Republic would retain a second appraiser to render an opinion. *Id.* ¶ 10 and Exh. 6. The second appraiser hired by Old Republic determined that the diminution in value was $1.5 million. *Id.* ¶ 11. Old Republic credited that appraisal and paid the Feduniaks an additional $1.4 million. *Id.* ¶ 12 and Exh. 8. Old Republic informed the Feduniaks that the check could be cashed without waiver of any claims asserted under the policy. *Id.*

The Feduniaks filed the present action in the Monterey County Superior Court on April 3, 2013. Old Republic removed the action to the Northern District of California on May 6, 2013. The Feduniaks assert three claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) insurance bad faith. Old Republic seeks partial summary judgment with respect to the contract claim insofar as it seeks recovery of defense costs incurred in the Coastal Commission action. Old Republic also seeks judgment with respect to the implied covenant and bad faith claims.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981)).

The moving party "bears the burden of showing there is no material factual dispute." *Hill*

*v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010). In order to meet its burden, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

A material fact is one that could affect the outcome of suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a Court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the plaintiffs." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). The Court "determines whether the non-moving party's specific facts, coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) (citing *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)). If the Court finds that a reasonable jury could find for the non-moving party, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 248. Conclusory and speculative testimony, however, is insufficient to defeat summary judgment. *See Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

**III.   DISCUSSION**

    **A.   Claim 1 (Breach of Contract)**

        **1.   Failure to Discover Easement Prior to Purchase**

The Feduniaks' first claim for breach of contract defines the relevant contract to be a combination of the preliminary title report prepared by Old Republic and the CLTA policy ultimately issued by Old Republic. Compl. ¶ 28, ECF 1. The Feduniaks allege that Old Republic breached this "contract" by failing to discover the easement prior to their purchase of the property and by failing to compensate them for all losses sustained as a result of that failure. *Id.* ¶ 30. The Feduniaks allege that those losses include the cost of defending the Coastal Commission action

and the diminution in value of the property. *Id.* ¶ 31.

That contract theory is not legally viable. Under California law,[5] a preliminary title report "shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted." Cal. Ins. Code § 12340.11. "The preliminary title report which the title insurer provides before a policy issues is merely an inducement for the prospective insured to buy such insurance and for the insurer to state in advance the precise risk which it will assume." *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th 1489, 1499 (1997). "The title insurer intends that the preliminary report represents only that a title insurance policy will be issued later which insures the title in the condition described in the preliminary report." *Id.* at 1500 (internal quotation marks and citation omitted) (emphasis omitted). This rule of law is consistent with the policy issued in this case, which states expressly that "[t]his policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company." § 14(a), Pls.' Exh. 1, ECF 62. The policy also states that "[a]ny claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy." *Id.* § 14(b). The Feduniaks do not offer any legal authority in support of their contract theory and their opposition brief merely glosses over Old Republic's argument on this issue. Pls.' Opp. at 12-16, ECF 56.

Accordingly, Old Republic's motion is GRANTED with respect to the Feduniaks' contract claim based upon Old Republic's failure to discover the easement prior to their purchase of the property.

### 2. Additional Contract Theories

The parties' briefing assumes that Claim 1 also alleges that Old Republic breached the policy by failing to reimburse the Feduniaks for the cost of defending the Coastal Commission

---

[5] California substantive law applies to this diversity action. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001) ("Because Mrs. Freeman resided in California and the insurance contract was made in California, California substantive law governs this diversity action.").

1    action and by failing to indemnify them fully for the diminution in value caused by the easement.

2    Those theories are not fairly encompassed by Claim 1.  However, because both parties apparently

3    understand Claim 1 to assert those theories, and in the interests of justice, the Court addresses the

4    additional theories herein and *sue sponte* GRANTS the Feduniaks leave to amend Claim 1 to

5    assert them.  *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("Where

6    plaintiffs fail[ ] to raise [a claim] properly in their pleadings, . . . [if] they raised it in their motion

7    for summary judgment, they should [be] allowed to incorporate it by amendment under Fed. R.

8    Civ. P. 15(b).") (internal quotation marks and citation omitted) (alteration in original).

9          With respect to its alleged breach of the duty to indemnify for diminution in value, Old

10   Republic acknowledges that there is a dispute between the parties as to the amount of diminution

11   in value caused by the easement and states that it does not seek summary judgment as to that

12   aspect of the contract claim.[6]  With respect to its alleged failure to pay defense costs, Old Republic

13   contends that the Coastal Commission action did not give rise to any potential for coverage under

14   the policy and thus did not give rise to a duty to defend.  Old Republic seeks partial summary

15   judgment of Claim 1 to the extent that it seeks to recover the costs incurred in defending the

16   Coastal Commission action.

### a. § 4(a)

Old Republic asserts that the Feduniaks' claim for defense costs is governed by § 4(a) of the policy, which states in its entirety as follows:

> 4. Defense and Prosecution of Action; Duty of Insured Claimant to Cooperate.
>
> (a)  Upon written request by an insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall *provide for the defense of such insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy.*  The Company shall have the right to select counsel of its choice (subject to the right of such insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel.  *The*

---

[6] The Court notes that on November 12, 2014, the Feduniaks filed a motion to continue the trial date, indicating that a question has arisen as to whether the home itself extends beyond the 14% development limitation permitted by the easement.  That motion, which is set for hearing on December 4, 2014, does not impact the present motion for partial summary judgment.

> *Company will not pay any fees, costs or expenses incurred by an insured in the defense of those causes of action which allege matters not insured against by this policy.*

§ 4(a), Pls.' Exh. 1, ECF 62 (emphasis added).  Old Republic contends that this provision did not give rise to a duty to defend the Feduniaks in the Coastal Commission action because there was no potential for coverage of that action.  At the hearing, the Feduniaks' counsel indicated that the Feduniaks are not asserting a duty to defend arising under § 4(a), but rather a duty to reimburse them for defense costs under § 4(b).  The Court nonetheless addresses application of § 4(a) briefly, because Old Republic devotes significant argument to § 4(a) and it has demonstrated its entitlement to summary judgment as to any claim for breach of § 4(a).

When a policy imposes upon the insurer a duty to defend, determination of whether that duty is triggered "usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Liberty Nat'l Enters., L.P. v. Chicago Title Ins.*, 217 Cal. App. 4th 62, 76 (2013) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19 (1995)). "The duty to defend applies even to noncovered claims so long as any of the claims asserted in the complaint discloses the potential for liability covered by the policy." *Id.* at 76.  The Court's comparison of the allegations of the Coastal Commission complaint with the terms of the Old Republic policy makes clear that no potential for coverage existed.  The duty to defend under § 4(a) extends only to "litigation in which any third party asserts a claim adverse to the title or interest." § 4(a).  The Coastal Commission complaint did not assert a claim adverse to the Feduniaks' title or interest; instead, it sought civil penalties for their alleged misconduct in failing to comply with the Commission's Orders.  The conduct that forms the basis of the allegations against the Feduniaks (failure to submit a compliant restoration plan and continued watering and mowing of the golf course) clearly arose after issuance of the policy and thus does not come within the scope of § 4(a).  *See Rosen*, 56 Cal. App. 4th at 1499.

Old Republic's motion is GRANTED with respect to the Feduniaks' contract claim to the extent it is based on § 4(a).

### 2. § 4(b)

In opposition to this motion, the Feduniaks assert that Old Republic had an obligation to

1  reimburse them for the cost of defending the Coastal Commission's action under § 4(b), which

2  states in its entirety as follows:

> (b) *The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest* or the lien of the insured mortgage, *as insured, or to prevent or reduce loss or damage to an insured.* The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provisions of this policy. *If the Company shall exercise its rights under this paragraph, it shall do so diligently.*

§ 4(b), Pls.' Exh. 1, ECF 62 (emphasis added). The Feduniaks' theory is that Old Republic exercised its right under this provision when it chose to pursue a plan to remove or modify the easement; that the Coastal Commission sued the Feduniaks because of the pursuit of that plan; and that Old Republic therefore is obligated to pay the defense costs that the Feduniaks incurred in defending the Coastal Commission action.

Old Republic argues that § 4(b) confers upon *it* a right to attempt to cure the title defect or reduce the loss, but that § 4(b) does not confer any right upon the Feduniaks. Old Republic takes the position that once the Commission's Cease and Desist and Restoration Orders became final, the Feduniaks were obligated to comply with them; Old Republic never advised them or otherwise caused them to delay in complying with the Orders; and the Feduniaks' misconduct in failing to comply is what motivated the Commission's lawsuit. Old Republic disputes the Feduniaks' contention that Old Republic's support of and payment for the February 19 plan constituted an exercise of its rights under § 4(b). Old Republic argues that § 4(b) is limited to "actions filed by Old Republic against third parties for the benefit of the insured." Def.'s Reply at 5, ECF 70. In any event, Old Republic argues, the evidence demonstrates that the Feduniaks were not sued as a result of offering the February 19 alternative plan but rather for their defiance in intentionally violating other portions of the Coastal Commission's Orders, for example, by continuing to water and mow the golf course. *Id.* at 7.

In light of the fact that § 4(b) is a standard title insurance policy provision, the Court is surprised by the dearth of authority interpreting it. It is clear that § 4(b) "gives the title insurer the right to rectify or remove whatever defect has arisen in the insured's title *in lieu of paying* for the

11

diminution in value caused thereby." Croskey, Kaufman, et al., *California Practice Guide: Insurance Litigation* ¶ 6:2666 (Rutter Group 2013) (emphasis in original). The Court notes that, contrary to Old Republic's assertion, the plain language of § 4(b) grants Old Republic the right not only to file an "action" but also "to do *any other act* which in its opinion may be necessary or desirable to establish the title . . . or to prevent or reduce loss or damage to an insured." § 4(b), Pls.' Exh. 1, ECF 62 (emphasis added). At least one court has held that "the right to establish the title as insured 'is a right coupled with a duty – that is, a duty to provide some form of suitable relief to an insured, using prudent judgment and reasonable diligence.'" *Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Florida, Inc.*, No. 4:09-CV-02872, 2011 WL 2313206, at *5 (S.D. Tex. June 9, 2011) (quoting Barlow Burke, *Law of Title Insurance* § 6.05 (2010)). In *Premier Tierra Holdings*, the plaintiff asserted a claim for breach of contract resulting from the defendant title insurance company's failure to cure title defects in a reasonably diligent manner as required under § 4(b) of the title insurance policy. The trial court denied in part the defendant's motion for summary judgment, holding that "claims for losses arising out of Ticor's delays in curing the title defects . . . remain for trial." *Id.* at *7.

*Premier Tierra Holdings* is not precisely on point, because the Feduniaks do not assert that Old Republic delayed in acting on the title defect. The case does state, however, that when a title insurer chooses to exercise its right under § 4(b), that right is coupled with a duty to the insured. While the scope of that duty is not clearly defined, the Court concludes that at the very least the insurer cannot exercise its right under § 4(b) to the *detriment* of the insured. And that is precisely what the Feduniaks allege happened here – that Old Republic's election to seek removal or modification of the easement resulted in the Coastal Commission's lawsuit against them. In order for the Feduniaks to defeat summary judgment on this claim, they must demonstrate that there is *evidence* supporting their contention that Old Republic invoked § 4(b) after the mandamus proceedings became final and that reimbursement of the costs of defense of the Coastal Commission lawsuit related to Old Republic's corresponding responsibility to cause no detriment to its insureds.

The evidence in the record indicates that Old Republic elected to proceed under § 4(b) at

several decision points following discovery of the defect. Much of the relevant evidence is presented in the declaration and deposition of David Robertson ("Robertson"), who served as Old Republic's Vice President and Counsel and was the claims attorney assigned to the Feduniaks' file through March 2012. *See* Robertson Decl. ¶ 3 and Exh. 2, ECF 41. Robertson testified that "there are alternative methods for resolving claims where you have accepted coverage for a missed encumbrance, one of which is to pay monetary damages, the other is to go through a court process or some process to perfect the title as insured." Robertson Dep. 40:25-41:4, ECF 63. Robertson's statement accurately describes Old Republic's choice under the policy, and under the case law discussed above, to proceed either by paying the Feduniaks the diminution in value caused by the easement *or* to exercise its right under § 4(b) to attempt to remove the defect to title.

It is undisputed that in 2002, Old Republic elected not to proceed with an appraisal to establish diminution in value, and instead made a § 4(b) election to pay the Feduniaks to negotiate with the Coastal Commission for the elimination of the easement. Robertson Decl. ¶ 6, ECF 41; *see also* Robertson Dep. 39:15-17, ECF 63 ("The plan was to file some application with the Coastal Commission to have them remove the encumbrance from the title of the Feduniaks' property.").

When those negotiations proved to be unsuccessful and the Coastal Commission initiated administrative proceedings against the Feduniaks, Old Republic made a second § 4(b) election, agreeing to pay the cost of defending the administrative proceeding. Robertson Decl. ¶ 7, ECF 41. In connection with that proceeding, Old Republic paid a lobbyist, David Naish, almost $50,000 for his work in lobbying the Commissioners on the Feduniaks' behalf. Robertson Dep. 75:8-77:7, ECF 63.

The administrative proceedings resulted in the issuance of the Cease and Desist Order and the Restoration Order in July 2003. Robertson Decl. ¶ 8, ECF 41. At that point Old Republic made a third § 4(b) election, agreeing to pay the cost of a mandamus action to challenge the Orders. Robertson Decl. ¶ 9, ECF 41.

The Feduniaks contend that after the mandamus action proved to be unsuccessful, Old Republic made yet another § 4(b) election to pursue the possibility of an alternative mitigation

13

1  plan that would allow them to retain a portion of the golf course while restoring other lands to
2  natural dune habitat. Robertson Dep. 85:16-86:6, ECF 63. Robertson understood at that point that
3  the mandamus litigation had been unsuccessful, that the California Supreme Court had denied
4  review, and that Coastal Commission's Orders had become final. *Id.* 100:21-101:18. The
5  Feduniaks offer evidence to show that Robertson nonetheless expressly approved the decision to
6  pursue an alternative mitigation plan. *Id.* 134:6-135:9. As of January and February 2008, the
7  Feduniaks' goal was still to pursue an off-site mitigation plan that would either eliminate or
8  substantially reduce the diminution in value caused by the easement, and they submit evidence
9  that Old Republic supported that goal. *Id.* 140:12-141:3. Old Republic agreed to contribute
10 $ 400,000 to such a plan. *Id.* 142:8-18; 148:6-15. Old Republic was fully "onboard" with the
11 alternative, off-site mitigation approach. *Id.* 150:5-13. As late as March 29, 2011, Robertson
12 assured the Feduniaks' counsel, John Bridges, that Old Republic had "agreed to defend and
13 indemnify the Feduniaks for any loss and costs associated with this problem."[7] Mar. 29, 2011
14 email, Pls.' Exh. 27, ECF 68.

15       Moreover, correspondence in the record suggests that Old Republic and the Feduniaks
16 believed that submission of the February 4 plan complied with the Restoration Order but were
17 sitting tight, waiting to see whether the Commission might agree to the alternative February 19
18 plan. Correspondence, Pls.' Exhs. 16-23, ECF 67. The correspondence includes a March 2010
19 confirmation that Old Republic was on board with the alternative mitigation approach, Mar. 11,
20 2010 email, Pls.' Exh. 22, ECF 67, and a September 2010 update in which Bridges informs
21 Robertson that "[t]iming on all of this is critical because once restoration plans are approved we

---

[7] Old Republic argues that Robertson was not aware of the Coastal Commission's October 2010 lawsuit when he made the representation regarding the scope of Old Republic's obligations, and that in any event Robertson was not authorized to modify Old Republic's obligations under the policy. The record does contain a May 2011 email exchange in which the Feduniaks' lawyer, Bridges, makes a reference to the Coastal Commission lawsuit which Roberson then questions, stating "[b]y the way, we are unaware of the lawsuit referenced in your email." *See* May 3, 2011 email, Pls.' Exh. 32, ECF 69. However, the Feduniaks' theory is not that Robertson expressly agreed to pay the costs of defending the Commission's lawsuit, but rather that Old Republic was obligated to pay for the costs because they resulted from Old Republic's § 4(b) election to pursue the alternative mitigation plan. Robertson's statement is relevant to show Old Republic's understanding of the scope of its obligation under § 4(b).

1   have to implement soon thereafter (i.e. remove golf-scape and restore/reconfigure topography
2   within 30 days; revegetate with native plants within 90 days)," Sept. 16, 2010 email, Pls.' Exh. 23,
3   ECF 67.
4         Old Republic argues that the trial transcript of the Coastal Commission action refutes any
5   argument that pursuit of the alternative mitigation plan was the motivation for that lawsuit.
6   Specifically, Old Republic cites to a colloquy between the trial court and the Commission's
7   counsel in which counsel represented that the suit was not motivated by the Feduniaks'
8   submission of the February 19 plan, but rather by the Commission's conclusion that the February
9   4 plan was not compliant with the Commission's Orders. *See* Tr. pp. 522-23, Martin Decl. Exh.
10  12, ECF 50.  While that colloquy was not sworn testimony, but rather counsel comment, it is
11  evidence of the Commission's motivation in bringing suit against the Feduniaks.  However,
12  counsel's comments are not dispositive of this issue.  Given the evidence that the Feduniaks
13  believed that the February 4 plan was compliant, that the February 19 plan followed so closely in
14  time, that the Commission waited for more than two years before acting on either plan, and the
15  record of communications between the Feduniaks and the Commission, a reasonable trier of fact
16  could conclude that in fact the Commission simply got fed up with the Feduniaks' continued
17  efforts to retain a portion of the golf course and filed suit for that reason.  Even the colloquy relied
18  upon by Old Republic suggests the Commission's irritation with the Feduniaks' persistence.
19  While stating that the Feduniaks were entitled to submit alternative proposals, counsel went on to
20  say, "[w]e think it was not necessarily all that productive to just submit an off-site remediation
21  plan or proposal when that had been repeatedly rejected by the Commission in the past and there
22  was no change in circumstances." *Id.* at 522.
23        Considering the record as a whole, and drawing all inferences in favor of the non-moving
24  party, the Court concludes that there are triable issues of fact whether Old Republic, having
25  availed itself of the rights provided under § 4(b) on several prior occasions, made a further
26  election under § 4(b) to support submission of an alternative mitigation plan; and whether such
27  further election under § 4(b), and the Feduniaks' conduct in pursuit of such election, led to the
28  Coastal Commission's lawsuit.  If those facts were resolved in the Feduniaks' favor, they would

1  be entitled to reimbursement of their defense costs in the Commission's action. The Court

2  recognizes that the Feduniaks bear a heavy burden of establishing not only a further § 4(b) election

3  by Old Republic but also causation between such § 4(b) election and the costs incurred in

4  defending the Commission's lawsuit. While the chances that the Feduniaks ultimately will be able

5  to meet that burden may be remote, Old Republic has not established its entitlement to summary

6  judgment at this stage in the proceedings.

7  Old Republic's motion is DENIED with respect to the Feduniaks' contract claim to the

8  extent it is based on § 4(b).[8]

### B. Claim 2 (Breach of Implied Covenant) and Claim 3 (Insurance Bad Faith)

Claim 2, for breach of the implied covenant of good faith and fair dealing, and Claim 3, for insurance bad faith, are duplicative. *See Archdale v. Amer. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n. 19 (2007) (explaining that, in the insurance context, a claim for breach of the implied covenant of good faith and fair dealing commonly is referred to as a claim for "bad faith."). A claim lies for insurance bad faith when the plaintiff can show that "the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l. Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001).

However, "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Id.* at 347. This "genuine dispute doctrine may be applied where the insurer

---

[8] The Court acknowledges that in general title insurance does not indemnify for events occurring years after issuance of the policy. "Title insurance, as opposed to other types of insurance, does not insure against future events." *Liberty*, 217 Cal. App. 4th at 75 (internal quotation marks and citation omitted); *see also Rosen*, 56 Cal. App. 4th at 1497. The Court's determination that § 4(b) may give rise to liability against Old Republic is limited to the unusual facts of this case.

16

denies a claim based on the opinions of experts." *Id.* (internal quotation marks and citation omitted). "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability." *Id.* (internal quotation marks and citation omitted).

### 1. Diminution in Value

Old Republic asserts that the parties' genuine dispute – each side supported by expert opinion – regarding the diminution in value caused by the easement cannot support a bad faith claim. The Feduniaks do not challenge this assertion. Based upon the authorities discussed above, and the record in this case, the Court concludes that no reasonable trier of fact could conclude that the Old Republic acted in bad faith with respect to the Feduniaks' contract claim for failure to pay full diminution of value.

Old Republic's motion is GRANTED with respect to the Feduniaks' bad faith claim to the extent it is based upon their contract claim for failure to pay full diminution of value.

### 2. Defense Costs

Old Republic contends that because it had no duty to defend the Coastal Commission action under § 4(a), its failure to pay defense costs cannot give rise to a bad faith claim. *See Waller*, 11 Cal. 4th at 35 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing."). Old Republic's argument does not speak to the Feduniaks' claim under § 4(b). Moreover, based upon the record evidence, it is possible that a reasonable trier of fact could conclude that Old Republic deliberately abandoned the Feduniaks when the strategy to pursue alternative mitigation led to the Coastal Commission action and potential exposure for millions of dollars in fines.

Old Republic's motion is DENIED with respect to the Feduniaks' bad faith claim to the extent it is based upon failure to reimburse them for the defense costs incurred in the Coastal Commission action.

### C. Punitive Damages

"In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith

to warrant a punitive award, it must be shown by *clear and convincing evidence* that the insurer has acted maliciously, oppressively or fraudulently." *Mock v. Michigan Millers Mutual Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992) (emphasis in original). Old Republic points to undisputed evidence that it acted promptly on the Feduniaks' claim and paid significant costs incurred in trying to remove or modify the easement. However, Old Republic ignores the Feduniaks' theory that it simply abandoned them when the alternative mitigation strategy culminated in the Coastal Commission action. For the same reasons that it is not entitled to summary judgment with respect to its bad faith claim, Old Republic is not entitled to summary judgment with respect to its prayer for punitive damages.

Old Republic's motion is DENIED with respect to the Feduniaks' prayer for punitive damages.

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Court *sua sponte* GRANTS Plaintiffs leave to amend their pleading to allege a breach of contract claim under § 4(b) of the policy and to combine their duplicative second and third claims; and

(2) Defendant's motion for partial summary judgment is GRANTED with respect to Claim 1 insofar as it is based upon Defendant's failure to discover the easement or upon § 4(a) of the policy, and as to Claims 2 and 3 insofar as they are based upon Defendant's failure to pay full diminution in value; otherwise, the motion is DENIED.

Dated: November 20, 2014

_____
BETH LABSON FREEMAN
United States District Judge