FOLGER LEVIN LLP
Roger B. Mead (CSB No. 093251, rmead@folgerlevin.com)
199 Fremont Street, 20th Floor
San Francisco, CA  94105
Telephone: 415.625.1050
Facsimile: 415.625.1091

FENTON & KELLER
Mark A. Cameron (CSB No. 111370, mcameron@fentonkeller.com)
2801 Monterey-Salinas Highway
Post Office Box 791
Monterey, CA 93942-0791
Telephone: 831.373.1241
Facsimile:  831.373.7219

Attorneys for Plaintiffs Robert Feduniak and Maureen Feduniak

HENNELLY & GROSSFELD LLP
Paul T. Martin (CSB No. 155367, pmartin@hgla.com)
Ronald K. Giller (CSB No. 142733, rgiller@hgla.com)
Sheila Wirkus Pendergast (CSB No. 251562, spendergast@hgla.com)
4640 Admiralty Way, Suite 850
Marina del Rey, CA 90292
Telephone: 310.305.2100
Facsimile: 310.305.2116

Attorneys for Defendant Old Republic National Title Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT FEDUNIAK AND MAUREEN FEDUNIAK,<br><br>                    Plaintiff,<br><br>          v.<br><br>OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, et al.,<br><br>                    Defendants. | Case No. 5:13-cv-02060-BLF<br>ORDER AOUUVING<br>**JOINT PRE-TRIAL CONFERENCE STATEMENT** AS MODIFIED BY THE COURT |

In accordance with the Court's April 10, 2014 Standing Order Re Final Pretrial

Conference – Jury Trial, the parties respectfully submit this Joint Pretrial Statement and Order.

# I.     The Action

## A.     The Parties:

Plaintiffs:  Robert Feduniak and Maureen Feduniak, individuals who reside in Las Vegas, Nevada.

Defendant:  Old Republic National Title Insurance Company, a corporation organized under the laws of the State of Minnesota with its principal place of business in Minnesota.

## B.     Substance of the Action:

This case arises out of a policy of title insurance (the "Policy") issued by Defendant Old Republic National Title Insurance Company to Plaintiffs Robert and Maureen Feduniak in connection with the Plaintiffs' purchase, in late 2000, of a residential property on 17-Mile Drive in Pebble Beach, California (the "Property"), for $13 million.  Subsequent to their purchase of the Property, in August 2001, the Plaintiffs learned that the Property was encumbered with a conservation easement (the "Easement") and that the development on the Property violated the Easement.  The Policy did not exempt the Easement from coverage.

Plaintiffs' First Amended Complaint asserts three causes of action.

### 1.     First Cause of Action.

The First Cause of Action seeks recovery of the difference between the value of the Property "as insured" (that is, the value of the Property if it were not encumbered by the Easement) and the value of the Property as encumbered by the Easement ("Diminution in Value Compensation").  Defendant does not dispute that it is obligated to pay Plaintiffs Diminution in Value Compensation, but asserts that its prior payments to Plaintiffs totaling $1.5 million reflect the full difference between the value of the Property "as insured" and the value of the Property as encumbered by the Easement as of August 2001, which was when Plaintiffs discovered the Easement.  Accordingly, the only element of the claim to be tried is the amount of the Diminution in Value Compensation.

### 2.     Second Cause of Action.

#### a.     Plaintiffs' Position.

Plaintiffs' Second Cause of Action asserts a claim under Section 4(b) of the Policy and

1    seeks recovery of approximately $1 million in expenses that the Plaintiffs incurred as a result of

2    efforts to mitigate the effects of the Easement on the value of the Property, including expenses

3    incurred defending litigation brought against the Plaintiffs by the California Coastal Commission.

4    As set forth in the Court's Order Granting in Part & Denying in Part Defendant's Motion for

5    Summary Judgment and in its Order Denying Defendant's Motion to Dismiss, the elements of

6    such a claim are proof (a) that Old Republic made an "election under § 4(b) to support submission

7    of an alternative mitigation plan;" (b) that "such further election under § 4(b) and the Feduniaks'

8    conduct in pursuit of such election, [caused] the Coastal Commission's lawsuit;" and (c) that

9    Plaintiffs were thereby harmed.  *See* Order Granting in Part & Denying in Part Defendant's

10    Motion for Summary Judgment at 15-16 (identifying elements); Order Denying Motion to

11    Dismiss at 4 (same).

12                              **b.      Defendant's Position.**

13             Defendant's position is that according to Plaintiffs' second claim for relief in their first

14    amended complaint, Plaintiffs seek reimbursement of costs incurred in defending the action that

15    the Coastal Commission commenced against Plaintiffs (the "Coastal Commission Action").

16    According to Plaintiffs' pleading, Plaintiffs claim that under Section 4(b) of the Policy, Defendant

17    approved and supported the submission of two alternative restoration plans and that as a

18    consequence, the Coastal Commission commenced the Coastal Commission Action.  (First Am.

19    Compl. ¶¶ 27-30.)

20             Based on Plaintiffs' allegations, Defendant does not agree that Plaintiffs' second claim for

21    relief seeks recovery (or, as a matter of law, could seek recovery) of expenses "incurred as a

22    result of efforts to mitigate the effects of the Easement on the value of the Property" or that

23    Plaintiffs could recover all such expenses based on a determination that "the mitigation efforts

24    were undertaken with the approval and support of Defendant pursuant to Section 4(b) of the

25    Policy."  Nothing in Section 4(b) or any other provision of the Policy permits an insured to incur

26    expenses and to seek reimbursement of those expenses from Defendant.  The policy provides for

27    the payment of diminution in value caused by a defect, lien or encumbrance on title and for the

28    payment of attorney's fees and expenses incurred in defense of the title.

The elements of a claim for breach of contract are:

      1.     The Plaintiffs and Defendant entered into a contract;

      2.     The Plaintiffs did all, or substantially all, of the significant things that the contract required them to do;

      3.     All conditions required by the contract for Defendant's performance had occurred;

      4.     Defendant failed to do something that the contract required it to do;

      5.     The Plaintiffs were harmed by that breach.

Defendant's position is that Defendant has no obligation under the Policy to pay for Plaintiffs' defense of the Coastal Commission Action, and should not be liable for a breach of the Policy based on Plaintiffs' allegations.  As the Court has ruled, the Coastal Commission Action did not allege a claim adverse to the Feduniaks' title.  Accordingly, the Policy does not obligate Old Republic to reimburse the Feduniaks for the cost of defending that case.  Contrary to the Feduniaks' allegations, Section 4(b) merely requires Defendant to act without delay when it takes action to establish title as insured or to prevent or reduce loss or damage to an insured.  It does not require Defendant to defend or settle actions against an insured that are not covered by Section 4(a) the Policy.  Indeed, Section 4(b) does not impose *any* duty to defend at all—the only duty to defend appears in Section 4(a).[1]

Even if Defendant could be liable for breaching the Policy by approving and supporting Plaintiffs' submission of an alternative mitigation plan, Defendant did not make an election under Section 4(b) of the Policy.  Accordingly, Defendant's obligation to act diligently did not arise. Plaintiffs admit that it was their choice to submit alternative mitigation plans, and it was their actions and their own attorneys' actions that caused the Coastal Commission to sue them.  After the Coastal Commission gave Plaintiffs a deadline to comply with its orders, Plaintiffs chose to submit two alternative plans and to continue maintaining the golf course.  Defendant did not

---

[1]  The Court has already granted Defendant's motion for summary judgment that Defendant had no duty to defend the Coastal Commission Action because it alleged post-policy conduct by Plaintiffs and did not allege a claim adverse to their title.

1  pursue this course of action.  This was Plaintiffs' plan and they carried it out.  Defendant did not

2  submit the plans or interface with the Coastal Commission in any way.  Plaintiffs did not seek

3  input from Defendant, they did not involve Defendant in the process, nor did they keep Defendant

4  informed of the status of their efforts to comply with the Coastal Commission's Orders or to

5  obtain approval of an alternative mitigation proposal.  If anyone's conduct caused the Coastal

6  Commission to file suit against the Feduniaks for violation of the orders, it was the Feduniaks

7  themselves and their attorneys.

8         Moreover, even if Defendant had made an election under Section 4(b) of the Policy,

9  Defendant is not responsible for Plaintiffs' damages because the submission of the alternative

10  restoration plan did not cause Plaintiffs any damages.  In the Coastal Commission Action, the

11  Coastal Commission alleged that Plaintiffs continued to water and mow the lawn in violation of

12  the orders.  The Coastal Commission alleged that Plaintiffs did not submit any plan that complied

13  with the orders.  The case did not turn on the alternative mitigation proposal.  The Feduniaks

14  prevailed in the trial of that case because they proved to the court that their original restoration

15  plan complied with the restoration order.  Defendant did not do anything to cause the Coastal

16  Commission to sue Plaintiffs.  Even under plaintiffs' interpretation of Section 4(b) of the Policy,

17  Old Republic has no liability for the defense of that case.

18         In addition to disproving the elements of Plaintiffs' second claim for relief, Defendant will

19  rely on the following defenses that are included in Defendant's answer to the first amended

20  complaint: failure to state a claim upon which relief may be granted, insured's conduct,

21  contributory and comparative fault of others, performance excused, post-policy conduct,

22  economic loss rule, speculative damages and no title defect.

23              **3.      Third Cause of Action.**

24                   **a.      Plaintiffs' Position.**

25         Plaintiffs' Third Cause of Action seeks damages for breach of the covenant of good faith

26  and fair dealing.  Plaintiffs allege that when the Coastal Commission commenced litigation

27  against the Plaintiffs as a result of the efforts to mitigate the effects of the Easement on the value

28  of the Property, seeking civil fines and penalties in excess of $25 million, Defendant abandoned

1   Plaintiffs, denying any involvement in or responsibility for the mitigation efforts and their

2   consequences.  The elements of the claim are that (1) Plaintiffs were insured under an insurance

3   policy with Defendant; (2) that pursuant to Section 4(b) of the Policy Defendant supported and

4   approved efforts to mitigate the effects of the Easement on the value of the Property; (3) that

5   Defendant abandoned Plaintiffs following the filing of the Coastal Commission lawsuit; (4)

6   Plaintiffs were harmed; and (5) Defendant's conduct was a substantial factor in causing Plaintiffs'

7   harm.  See Order on Summary Judgment at 18.

8                          **b.     Defendants' Position**

9          Defendant's position is that Plaintiffs' third claim for relief in their first amended

10  complaint is that Defendant breached the implied covenant of good faith and fair dealing because

11  Defendant "declined to participate in efforts to settle the Commission Lawsuit or to pay any of

12  the costs associated with the lawsuit, deliberately abandoning the Plaintiffs when the strategy to

13  pursue alternative mitigation" led the Commission to sue plaintiffs.  (First Amended Complaint

14  ¶¶ 18, 20.)

15         Based on Plaintiffs' allegations, Defendant does not agree that Plaintiffs' third claim for

16  relief could as a matter of law support recovery of damages for a breach of the implied covenant

17  of good faith and fair dealing based on Defendant's "den[ial] [of] any involvement in or

18  responsibility for the mitigation efforts and their consequences."  Defendant further denies that it

19  can be liable for a breach of the implied covenant of good faith and fair dealing based on the

20  elements cited by Plaintiffs, specifically including that under "Section 4(b) of the Policy

21  Defendant supported and approved efforts to mitigate the effects of the Easement on the value of

22  the Property."

23         The elements of a claim for breach of the covenant of good faith and fair dealing are:

24              1.     That the Feduniaks suffered a loss covered under an insurance policy with

25  Old Republic;

26              2.     That Old Republic was notified of the loss;

27              3.     That Old Republic, unreasonably or without proper cause, failed to pay

28  policy benefits;

1           4.      That the Feduniaks were harmed; and

2           5.      That Old Republic's failure to pay policy benefits was a substantial factor

3 in causing the Feduniaks' harm.

4        Defendant contends that the Coastal Commission Action was not a covered claim because

5 it alleged conduct on the part of the Feduniaks.  A claim for bad faith cannot be maintained unless

6 policy benefits are due to the insured.  Where an insurer does not deny benefits due under the

7 policy, it cannot be liable for breach of the implied covenant of good faith and fair dealing.

8 Moreover, a claim for breach of the implied covenant of good faith and fair dealing involves

9 something more than a breach of the contract or mistaken judgment.  There must be proof the

10 insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad

11 judgment, or negligence, but rather by a *conscious* and *deliberate* act, which unfairly frustrates

12 the agreed common purposes and disappoints the reasonable expectations of the other party

13 thereby depriving that party of the benefits of the agreement.  It must be shown that the insurer

14 acted unreasonably or without proper cause.

15        Defendant contends that Plaintiffs are not entitled to any Policy benefits under Section

16 4(b) of the Policy.  Section 4(b) simply requires Defendant to be diligent if it exercises its right to

17 establish title as insured or reduce loss or damage to the insured.  Defendant did not take any act.

18 The Plaintiffs acted and were required to act in order to comply with the Coastal Commission's

19 orders.  Plaintiffs cannot prove any lack of diligence by Defendant caused the Coastal

20 Commission to seek fines and penalties from Plaintiffs.  Because Plaintiffs cannot recover for

21 breach of the Policy, they cannot recover for breach of the covenant of good faith and fair

22 dealing.

23        Even if Section 4(b) could be construed as providing Policy benefits to Plaintiffs, which it

24 cannot, Defendant cannot be liable for a breach of the covenant of good faith and fair dealing by

25 denying the tender of defense of the Coastal Commission Action.  Defendant did not invoke

26 Section 4(b) and was not responsible for causing the Coastal Commission to sue the Plaintiffs.

27 Plaintiffs caused the action to be commenced based on their own failure to stop mowing the lawn

28 and failure to submit a remediation plan that was acceptable to the Coastal Commission.

1    Because Defendant had no obligation to defend Plaintiffs in the Coastal Commission

2    Action, Plaintiffs' allegation that Old Republic "deliberately abandoned" them so that they were

3    "compelled to defend" themselves cannot provide a basis for a bad faith claim.  Plaintiffs were

4    not entitled to a defense of the Coastal Commission Action under the Policy.  Accordingly,

5    Plaintiffs have no cause of action against Defendant for breach of the implied covenant of good

6    faith and fair dealing for denying the defense.

7    Moreover, even if Plaintiffs somehow could establish at trial that they were entitled to a

8    Policy benefit of a defense of the Coastal Commission Action under Section 4(b) despite the

9    absence of any such language in that policy provision, Old Republic acted reasonably and with

10   proper cause when it denied the tender of defense.  Old Republic's denial was based on Section

11   4(a) of the Policy.  The Coastal Commission Action alleged conduct on the part of the Feduniaks

12   in violation of the orders and not a claim adverse to their title.  Section 4(b) of the Policy contains

13   no term that requires Old Republic to reimburse Plaintiffs' legal expenses, or participate in

14   settlement discussions in a case where Old Republic has no duty to defend.  Indeed, the express

15   terms of the Policy state the opposite: Old Republic will not pay these types of expenses in the

16   defense or settlement of claims not covered by the Policy.[2]  Given that Plaintiffs' request for

17   reimbursement is contrary to an express Policy term, and there is no authority that supports

18   Plaintiffs' interpretation of the Policy, Defendant's refusal to pay such costs was reasonable.

19   In addition to disproving the elements of Plaintiffs' third claim for relief, Defendant will

20   rely on the following defenses that are included in Defendant's answer to the first amended

21   complaint: failure to state a claim upon which relief may be granted, insured's conduct,

22   performance excused, post-policy conduct, no title defect, speculative damages and genuine

23

---

24   [2]  Policy § 4(a) ["The Company shall have the right to select counsel of its choice (subject to the

25   right of the insured to object for reasonable cause) to represent the insured as to those stated cause of action [insured against by this policy] and shall not be liable for and will not pay the fees of

26   any other counsel. The Company will not pay any fees, costs or expense incurred by an insured in the defense of those causes of action which allege matters not insured against by this policy"]; §

27   8(c) ["The Company shall not be liable for loss or damage to any insured for liability voluntarily

28   assumed by the insured in settling any claim or suit without the prior written consent of the Company"].

dispute doctrine.

**C.     Relief Sought:**

 **1.     First Cause of Action.**

  **a.     Plaintiffs' Position.**

On their First Cause of Action, Plaintiffs expect to seek recovery of an additional $5 million from Defendant as Diminution in Value Damages (Plaintiffs will present evidence that the Diminution in Value Damages total approximately $6.5 million, so they will seek recovery of that amount less the $1.5 million already paid by Defendant).   However, this assumes that the Plaintiffs are successful in their current efforts to resolve issues relating to the scope of the Easement with the Del Monte Forest Conservancy and Monterey County; if not, Plaintiffs' estimated Diminution in Value Damages will be $10 million, and the additional damages they will seek to recover will be $8.5 million.

  **b.     Defendant's Position.**

Defendant contends that Plaintiffs are not entitled to any additional diminution in value compensation because Defendant has already paid the $1.5 million amount to Plaintiffs to which they are entitled.  Defendant contends that the diminution in value analysis of Plaintiffs' expert witness, Terry Lloyd, is flawed and should not be admissible under FRE 702.  Defendant contends that it is irrelevant whether improvements on the Property encroach on the Easement because the Policy does not provide coverage for encroachments.  The Policy only provides coverage for loss caused by defects, liens and encumbrances on title.  Other title insurance policies provide coverage for loss caused by encroachments, but not the CLTA Standard Coverage Policy purchased by the Feduniaks.

 **2.     Second Cause of Action.**

  **a.     Plaintiffs' Position.**

On their Second Cause of Action, Plaintiffs seek to recover a total of $943,322.43, consisting of (i) various unreimbursed expenses incurred in connection with the efforts to mitigate the effects of the Easement on the value of the Property ($131,861.78); (ii) legal fees and expenses incurred in connection with the litigation brought against the Plaintiffs by the California

1  Coastal Commission ($686,460.65); and (iii) the amount the Plaintiffs paid to the City of Pacific

2  Grove dune enhancement project pursuant to the settlement agreement that terminated that

3  litigation ($125,000).

4              **b.      Defendant's Position.**

5              Defendant contends that Plaintiffs are not entitled to recover unreimbursed expenses in

6  connection with the alleged efforts to "mitigate" the effects of the Easement ($131,861.78) or the

7  amount Plaintiffs paid to the City of Pacific Grove dune enhancement project ($125,000).  These

8  amounts have nothing to do with any breach of Section 4(b) by Defendant, which Plaintiffs allege

9  renders Defendant liable for Plaintiffs' legal fees in defending the Coastal Commission Action.

10 There is no obligation on the part of Old Republic under Section 4(b) to reimburse Plaintiffs for

11 any alleged efforts to mitigate the effects of the easement on the value of the Property.  There is

12 no obligation under Section 4(b) of the Policy to reimburse the Feduniaks for charitable donations

13 they made to settle lawsuits against them based on their alleged conduct.  Title insurance is not

14 liability insurance.  Defendant was not obligated to indemnify the Plaintiffs for any penalties if

15 they were to lose the Coastal Commission Action.  If for any reason Plaintiffs were entitled under

16 Section 4(b) to recover legal fees in defending against the Coastal Commission Action, Defendant

17 contends that Plaintiffs are not entitled to recover pre-tender defense costs.  Section 4(a) limits the

18 payment of attorney's fees to those incurred post-tender.  Section 4(b) does not provide for the

19 reimbursement of any attorney fees.  Plaintiffs certainly cannot be permitted to recover more

20 under Section 4(b) than they would be entitled to under Section 4(a) if the Coastal Commission

21 Action had been a covered matter.  Plaintiffs did not tender the defense of the Coastal

22 Commission Action until January 2012.  Accordingly, Plaintiffs may not recover any fees and

23 costs incurred prior to that tender.

24              **3.      Third Cause of Action.**

25              **a.      Plaintiffs' Position.**

26              On their Third Cause of Action Plaintiffs seek damages in an amount to be determined at

27 trial for Defendant's breach of the implied covenant of good faith and fair dealing, including the

28 attorneys' fees and costs incurred by Plaintiffs in defending against the Coastal Commission

1  lawsuit; the attorneys' fees and costs incurred in this lawsuit to obtain policy benefits; non-

2  economic damages for emotional and mental stress; and punitive damages.

3  **b.      Defendant's Position.**

4  Defendant contends that that the defense costs in the Coastal Commission Action are only

5  recoverable, if at all, as damages on the second claim for relief.  Defendant contends that attorney

6  fees are recoverable as damages in a bad faith claim only to the extent they are incurred to obtain

7  policy benefits.  It is incumbent on plaintiff to prove an appropriate allocation of attorney's fees.

8  Fees incurred to establish the amount of diminution in value from the easement are not

9  recoverable because that part of the case is not part of the claim for breach of the covenant of

10  good faith and fair dealing.  The Court granted Old Republic's motion for partial summary

11  judgment on that claim on the genuine dispute doctrine.  Fees incurred to establish a breach of the

12  covenant of good faith and fair dealing are not recoverable as damages.  Plaintiffs would only be

13  entitled to recover as damages on the claim for breach of the implied covenant those attorney fees

14  incurred to prove their second claim for relief.

15  Emotional distress damages are only recoverable to the extent they are related to financial

16  deprivation.  The Feduniaks in this case testified that they were not concerned that they could not

17  afford to pay their attorneys to defend them in the Coastal Commission Action.  They paid their

18  attorneys' bills for over a year before they tendered the defense and continued to do so after

19  Defendant rejected their tender.  Any stress they experienced was a result of being sued by the

20  Coastal Commission and not by a refusal of Defendant to pay for their defense.  Accordingly,

21  Plaintiffs are not entitled to emotional distress damages in this case.  Plaintiffs are not entitled to

22  punitive damages because Defendant's decision to deny the defense of the Coastal Commission

23  Action was reasonable as a matter of law.  The Coastal Commission did not allege a claim against

24  the Feduniaks' title.  Accordingly, the claim was not covered.  There is no law that supports

25  plaintiffs' interpretation of Section 4(b) so as to impose an obligation under that provision to

26  defend the Coastal Commission Action.  Old Republic acted in good faith and with proper cause.

27  It did not act with malice, oppression or fraud.

28

1

**D.     Federal Jurisdiction and Venue:**

2       Plaintiffs commenced this action on April 3, 2013, in the Superior Court of the State of

3   California for the County of Monterey.  On May 6, 2013, Defendant removed the case to the

4   United States District Court for the Northern District of California.  This Court has jurisdiction

5   under 28 U.S.C. §§ 1332 and 1441(b).  Pursuant to 28 U.S.C. § 1391(b)(2) the Northern District

6   of California is a judicial district in which this action may be brought because a substantial part of

7   the events or omissions giving rise to the claim occurred there.

8                          **II.     Factual Basis of the Action**

9       **A.     Undisputed Facts:**

10      1.     On October 14, 1983 the individuals who owned the Property at that time (Bert

11  Bonanno and Bonnie Bonanno, H. James Griggs and Gail I. Griggs, John Miller and Marcie L

12  Miller)  recorded an "Irrevocable Offer to Dedicate Open Space Easement and Declaration of

13  Restrictions."   A copy of the Irrevocable Offer is Exhibit 158 identified in Appendix B.

14      2.     On October 28, 1986 the California Coastal Commission recorded a "Certificate of

15  Acceptance" certifying that Del Monte Forest Foundation, Inc. (now known as the Del Monte

16  Forest Conservancy) accepted the irrevocable Offer to Dedicate recorded by the prior owners of

17  the property.  A copy of the Certificate of Acceptance is Exhibit 200 identified in Appendix B.

18      3.     In or around late 1983 Bert and Bonnie Bonanno became the sole owners of the

19  Property.  Thereafter they constructed improvements on the Property, consisting of a single

20  family home, a garage/caretaker unit, and appurtenant decks, patios, driveway and landscaping,

21  including a three-hole pitch-and-putt golf course ("Golf Course") in the front of the house.  The

22  Golf Course did not conform to the Easement, which limited the landscaping in the front of the

23  house to native dune habitat.

24      4.     In November, 2000, the Plaintiffs purchased the Property from the Bonannos for

25  $13 million.  The Plaintiffs were unaware of the existence of the Easement or that the Property

26  did not conform to the Easement.

27

28

FOLGER LEVIN LLP
ATTORNEYS AT LAW

-12-

5. In connection with their purchase of the Property, the Plaintiffs purchased title insurance from Defendant. A copy of the CLTA Title Insurance Policy issued by Defendant for the benefit of the Plaintiffs (the "Title Policy") is Exhibit 97 identified in Appendix B.

6. The Title Policy did not list the Easement as an exception from the coverage provided under the Title Policy.

7. In or about August 2001 a representative of the Del Monte Forest Foundation informed the Plaintiffs that their landscaping, including the Golf Course, violated the Easement and must be removed.

8. The Plaintiffs timely notified Defendant of the claim asserted by the representative of the Del Monte Forest Foundation.

9. In or about February 2003 the California Coastal Commission commenced an administrative proceeding against the Plaintiffs, and in or about July 2003 the Commission approved the issuance of a Cease-and-Desist Order and a Restoration Order.

10. The Plaintiffs filed a Petition for Writ of Administrative Mandate in the Monterey County Superior Court seeking to prevent the Coastal Commission from enforcing the Cease-and-Desist and Restoration Orders. Following trial the Monterey County Superior Court entered judgment estopping the Commission from enforcing the Cease and Desist and Restoration Orders while the Plaintiffs owned the Property. The Coastal Commission appealed and the Court of Appeal reversed the ruling of the trial court. In 2007 the California Supreme Court denied review and the decision of the Court of Appeal became final.

11. After the Supreme Court denied review, the Coastal Commission notified Plaintiffs that they had until February 4, 2008 to submit a restoration plan for approval.

12. Defendant paid the cost of restoration of the Property.

13. Defendant has paid Plaintiffs $1.5 million as Diminution in Value Damages.

**B.    Disputed Facts.**

       **1.    Plaintiffs' Description of the Disputed Facts:**

14. Did other improvements constructed on the Property by the Bonannos besides the landscaping on the Property in the front of the house (the Golf Course), conform to the Easement?

15.     Did Defendant, acting pursuant to Paragraph 4(b) of the Policy, approve and support the Plaintiffs' further efforts to mitigate the effects of the Easement on the value of the Property, including the Plaintiffs' submission to the Coastal Commission of alternative restoration plans?

16.     Did Defendant, acting pursuant to Paragraph 4(b) of the Policy, pay most of the expenses associated with Plaintiffs' efforts to mitigate the effects of the Easement on the value of the Property, including some or all of the cost of the preparation of the alternative restoration plans?

17.     Did Defendant, acting pursuant to Paragraph 4(b) of the Policy, agree to fund the off-site restoration called for under the February 19, 2008 plan?

18.     Were the efforts to mitigate the effects of the Easement on the value of the Property, including the Plaintiffs' submission to the Coastal Commission of alternative restoration plans, a substantial factor contributing to the Coastal Commission's pursuit of the Commission Lawsuit?

19.     Did Defendant deliberately abandon the Plaintiffs when the strategy to mitigate the effects of the Easement on the value of the Property led to the Commission's filing of the Commission Lawsuit and pursuit of the Commission Lawsuit for more than $25 million in fines and penalties even after the revised restoration plan was approved and implemented?

20.     What is the difference between the value of the Property "as insured" and the value of the Property as encumbered by the Easement?

21.     What expenses did the Plaintiffs incur in connection with the efforts to mitigate the effects of the Easement on the value of the Property that were not paid or reimbursed by Defendant?

22.     What legal fees and expenses did the Plaintiffs incur in connection with the Commission Lawsuit?

23.     What legal fees and expenses have been incurred by the Plaintiffs to obtain policy benefits?

**2.     Defendant's Description of the Disputed Facts:**

24.     The difference in value of the Property with and without the Easement as of August 2001.

25.     Without conceding that Defendant can be liable for a breach of Section 4(b) of the Policy based on Plaintiffs' allegations, whether Defendant invoked Section 4(b) of the Policy.

26.     Without conceding that Defendant can be liable for a breach of Section 4(b) of the Policy based on Plaintiffs' allegations, whether Defendant approved and supported the submission of alternative mitigation plans.

27.     Without conceding that Defendant can be liable for a breach of Section 4(b) of the Policy based on Plaintiffs' allegations, whether the submission of an alternative mitigation plan to the Coastal Commission by the Plaintiffs caused Plaintiffs damages by causing the Coastal Commission to commence the Coastal Commission Action.

28.     Without conceding that Defendant can be liable for a breach of Section 4(b) of the Policy based on Plaintiffs' allegations, the amount of legal fees incurred in the Coastal Commission Action which Plaintiffs may recover if Defendant invoked Section 4(b) of the Policy.

29.     Without conceding that Defendant can be liable for a breach of Section 4(b) of the Policy based on Plaintiffs' allegations, and assuming that Defendant invoked Section 4(b) of the Policy, whether Defendant was reasonable in denying the defense of the Coastal Commission action.

30.     The amount of damages to which Plaintiffs may be entitled to recover if Defendant is liable for a breach of the implied covenant of good faith and fair dealing.

### III.     Disputed Legal Issues:

**A.     Plaintiffs' Position Regarding Disputed Legal Issues.**

Plaintiffs' are not aware of any disputed legal issue that has not already been addressed and ruled on by the Court.  The legal issues identified below by Defendant as "disputed" have been resolved as follows:

1.     The Court addressed and rejected Defendant's arguments that it cannot be liable,

1  as a matter of law, for breach of Section 4(b) of the Policy in both (1) the November 20, 2014

2  Order Granting in Part & Denying in Part Defendant's Motion for Partial Summary Judgment

3  ("Summary Judgment Order"); and (2) the February 13, 2015 Order Denying Defendant's Motion

4  to Dismiss.  Plaintiffs respectfully submit the Court's rulings on this issue were correct for the

5  reasons set forth in those orders.

6         2.    The Court addressed and rejected Defendant's arguments that it cannot be liable as

7  a matter of law, for breach of the implied covenant of good faith and fair dealing/bad faith in its

8  Summary Judgment Order, including Defendant's position that the "genuine dispute" doctrine

9  precludes liability as a matter of law.  Summary Judgment Order, at 15-16.  Plaintiffs respectfully

10  submit that the Court's ruling on these issues were correct for the reasons set forth in the

11  Summary Judgment Order.

12         **B.    Defendant's Position Regarding Disputed Legal Issues.**

13         Defendant contends that it cannot be liable for a breach of Section 4(b) of the Policy based

14  on Plaintiffs' allegations.  Section 4(b) of the Policy merely requires Defendant to act without

15  delay when it seeks to establish title as insured or prevent or reduce loss or damage to an insured.

16  It does not require Defendant to reimburse expenses incurred by the Plaintiffs in an effort to

17  mitigate the effects of the Easement on the value of the Property.  It does not require Defendant to

18  defend or settle actions against an insured that are not covered by Section 4(a) the Policy.  Section

19  4(b) does not impose any duty to defend at all—the only duty to defend appears in Section 4(a).

20  As such, Defendant contends that, as a matter of law, it cannot be liable for a breach of the Policy

21  based on Plaintiffs' alleged theory of liability.

22         Defendant further contends that it cannot be liable for a breach of the implied covenant of

23  good faith and fair dealing as a matter of law.  The law implies in every contract, including title

24  insurance contracts, a covenant of good faith and fair dealing.  *See White v. Western Title Ins.*

25  *Co.,* 40 Cal.3d 870, 885 (1985); *Stalberg v. Western Title Ins. Co.,* 230 Cal.App.3d 1223, 1233

26  (1991); *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 818 (1979).  This covenant is implied

27  as a supplement to the express covenants in the insurance policy to prevent the insurer from

28  engaging in conduct that frustrates the insured's rights to the benefits provided by the policy.

1    *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 36 (1995).

2            "Absent that contractual right, however, the implied covenant has nothing upon which to

3    act as a supplement, and 'should not be endowed with an existence independent of its contractual

4    underpinnings.'" *Id.* (quoting *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1153 (1990)).

5    The implied covenant of good faith and fair dealing "cannot impose substantive duties or limits

6    on the contracting parties beyond those incorporated in the specific terms of their agreement."

7    *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349 (2000).

8            A claim for bad faith cannot be maintained unless policy benefits are due to the insured.

9    *Love v. Fire Ins. Exchange*, 221 Cal.App.3d at 1153.  Where the insurer did not deny benefits due

10   under the policy, it cannot be liable for breach of the implied covenant of good faith and fair

11   dealing. *See Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011).

12           Moreover, a claim for breach of the implied covenant of good faith and fair dealing

13   involves something more than a breach of the contract or mistaken judgment. *Chateau*

14   *Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.,* 90 Cal.App.4th 335, 345 (2001).

15   There must be proof the insurer failed or refused to discharge its contractual duties not because of

16   an honest mistake, bad judgment, or negligence, "but rather by a *conscious* and *deliberate* act,

17   which unfairly frustrates the agreed common purposes and disappoints the reasonable

18   expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.*

19   at 346 (emphasis added).  It must be shown that the insurer acted unreasonably or without proper

20   cause. *Id*. at 347.

21           Section 4(b) of the Policy does not provide any benefits to the insured.  It simply requires

22   Defendant to be diligent if it exercises its right to establish title as insured.  Here, Plaintiffs cannot

23   prove any lack of diligence by Defendant caused the Coastal Commission to seek fines and

24   penalties from Plaintiffs.  Because Plaintiffs cannot recover for breach of the Policy, they cannot

25   recover for breach of the covenant of good faith and fair dealing.  *See Waller,* 11 Cal. 4th at 36;

26   *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th at 493.

27           Moreover, Old Republic did not act unreasonably or without proper cause. *See Chateau*

28   *Chamberay*, 90 Cal. App. 4th at 347; *Hergenroeder v. Travelers Property Cas. Ins. Co.*, 249

1    F.R.D. 595, 615 (E.D. Cal. 2008).  Here, the Policy itself contains no term that requires

2    Defendant to reimburse Plaintiffs' legal expenses, or participate in settlement discussions in a

3    case where Defendant has no duty to defend.  Indeed, the express terms of the Policy state the

4    opposite: Defendant will not pay these types of expenses in the defense or settlement of claims

5    not covered by the Policy.  Given that Plaintiffs' request for reimbursement was contrary to an

6    express policy term, Defendant's refusal to pay such costs was reasonable and with proper cause

7    as a matter of law.

8         The genuine dispute doctrine should preclude any bad faith liability.  An "insurer denying

9    or delaying the payment of policy benefits due to the existence of a genuine dispute with its

10   insured as to the existence of coverage liability or the amount of the insured's coverage is not

11   liable in bad faith even though it might be liable for breach of contract."  *Chateau Chamberay*

12   *Homeowners Ass'n*, 90 Cal. App. 4th at 347) (citation omitted).  This is known as the "genuine

13   dispute" or "genuine issue" doctrine, and it entitles an insurer to judgment on a bad faith cause of

14   action "by establishing that its denial of coverage, even if ultimately erroneous and a breach of

15   contract, was due to a genuine dispute with its insured."  *Bosetti v. U.S. Life Ins. Co. in the City of*

16   *New York*, 175 Cal. App. 4th 1208, 1237 (2009) (citing *Chateau Chamberay Homeowners Ass'n*,

17   90 Cal. App. 4th at 347).

18        The reasonableness of the insurer's position is determined against an ***objective***, not

19   subjective, standard.  *Bosetti*, 175 Cal. App. 4th at 1237.  Indeed, "[i]f the conduct of the insurer

20   in denying coverage was objectively reasonable, its subjective intent is irrelevant."  *Id.* (citations

21   omitted).  When the issue of "the insurer's objective reasonableness depends on an analysis of

22   legal precedent, reasonableness is a legal issue reviewed de novo."  *CalFarm Ins. Co. v.*

23   *Krusiewicz*, 131 Cal. App. 4th 273, 287 (2005).

24        Here, even if it is determined that Plaintiffs' were somehow entitled to coverage under

25   Section 4(b), there was a "genuine dispute" as to coverage that is plainly apparent.  There is no

26   authority that holds that an insurer can be liable for defense costs under Section 4(b) where there

27   is no duty to defend under Section 4(a).  Plaintiffs' theory of liability is a novel application of

28   Section 4(b), which lacks legal support.

1    Defendant did not unreasonably withhold any policy benefits.  If Section 4(b) somehow

2    entitles the Feduniaks to Policy benefits, Defendant's denial of the tender of defense on the basis

3    that there was no duty to defend under Section 4(a) was objectively reasonable.  *CalFarm Ins.*

4    *Co.*, 131 Cal. App. 4th at 291 (insurer acted objectively reasonably and was not liable for bad

5    faith where "[t]he case law does not clearly resolve, one way or the other, the precise coverage

6    issue presented here"); *Morris v. The Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 976

7    (2003) (insurer did not act unreasonably where it had "the highest courts of several jurisdictions,

8    as well as two California Courts of Appeal, in its corner" concerning interpretation of policy

9    language).

10                          **IV.      Estimate of Trial Time:**

11    The parties estimate that 70 hours will be needed to try the case, not including jury

12    selection.

13                          **V.      Trial Alternatives and Options.**

14          **A.      Settlement Discussion:**

15    In November 2013 the parties engaged in a two day mediation before Retired Judge

16    Richard Silver.  The parties engaged in a second one day mediation with Judge Silver in April

17    2014.  At that time the parties did not yet have the report of the Plaintiffs' expert showing the

18    extent of the diminution in value of the Property caused by the Easement, nor were the parties or

19    Judge Silver aware that improvements on the Property in addition to the Golf Course may violate

20    the Easement.  At the conclusion of the mediation Judge Silver made a "mediator's proposal."

21    Plaintiffs rejected that proposal.

22    In December 2014, after the parties learned that improvements on the Property in addition

23    to the Golf Course may violate the Easement, the parties engaged in a further mediation before

24    Retired Judge William Cahill.  At that mediation Defendant's representative, Cynthia Long, made

25    clear to the Plaintiffs and Judge Cahill that Ms. Long had no authority to offer more than the

26    amount of Judge Silver's "mediator's proposal" that had already been rejected by the Plaintiffs

27    *before* they learned that uncertainty about whether existing improvements on the Property

28    conform to the Easement significantly impacts the value of the Property.

1    Plaintiffs believe that further negotiations will be productive only if someone with greater

2    authority than Ms. Long participates on behalf of Defendant.

3    Defendants do not believe that any further mediation or ADR would be productive.  There

4    have been three separate unsuccessful mediations in this case.

5

**B.**    **Amendments or Dismissals:**

6    The parties no not anticipate any further amendments to the pleadings or dismissals of

7    parties, claims or defenses.

8

**C.**    **Bifurcation or Separate Trial of Issues.**

9

**1.**    **Plaintiffs' Position.**

10    Plaintiffs have proposed that the parties stipulate to a post-trial allocation and award of

11    any attorneys' fees and costs that may be recoverable pursuant to the third cause of action for bad

12    faith, consistent with the California Supreme Court's holding that such "a stipulation for

13    postjudgment allocation and award by the trial court would normally be preferable." *Brandt v.*

14    *Superior Court,* 37 Cal. 3d 813 (1985).

15

**2.**    **Defendant's Position.**

16    Defendant has declined to enter into a *Brandt* stipulation.  Defendant does not stipulate to

17    have the issue of Brandt fees decided by the court after the jury trial.  Unless the parties stipulate

18    otherwise, the question of what fees incurred by the insured were attributable to services to obtain

19    policy benefits withheld, and the value of such services, must be submitted to the jury.  *See*

20    *Brandt v. Superior Court,* 37 Cal.3d 813, 820 (1985).

21

**VI.**    **Appendices.**

22    Attached hereto as Appendix A are a list for each party of all witnesses likely to be called

23    at trial, including those appearing by deposition, with a short statement of the substance of each

24    witness's testimony and an estimate of the length of testimony (including direct and cross-

25    examination) and, if the witness is an expert witness, a statement of the expert's theories and

26    conclusions and the bases therefor and the expert's curriculum vitae and report.

27    Attached hereto as Appendix B is a joint exhibit list in tabular form, with (a) a column

28    identifying the exhibit number; (b) a column briefly describing the exhibit; (c) a column

1  describing the purpose for which the exhibit is offered and identifying its sponsoring witness; (d)

2  a column stating any objections to the exhibit; (e) a column responding to the objections; and (f) a

3  blank column for the Court's use.

4       Attached hereto as Appendix C are excerpts of interrogatory responses, responses to

5  requests for admission, and deposition testimony (with specific line references identified) that

6  each party intends to present at trial.

7  **VII.   Parties' Certification.**

8       The foregoing admissions having been made by the parties, and the parties having

9  specified the foregoing issues of fact and law remaining to be litigated, this order shall

10  supplement the pleadings and govern the course of trial of this action, unless modified to prevent

11  manifest injustice.

12

13  Dated: April 9, 2015

           FOLGER LEVIN LLP

14             */s/ Roger B. Mead*

15             Roger B. Mead

16

17  Dated: April 9, 2015

           FENTON & KELLER

18             */s/ Mark A. Cameron*

19             Mark A. Cameron

20             Attorneys for Plaintiffs
         Robert Feduniak and Maureen Feduniak

21

22  Dated: April 9, 2015

           HENNELLY & GROSSFELD LLP

23             */s/ Paul T. Martin*

24             Paul T. Martin

25             Attorneys for Defendant
    Old Republic National Title Insurance Company

26

27

28

1      The Court HEREBY AÖUÚVÙ the parties' Joint Pretrial Conference Statement

2  as modified by the Second Amended Complaint and this Court's rulings on the parties'

3  motions in limine and other pretrial rulings.

4

5  Dated:  7/1/2015

6                               _____

7                               BETH LABSON FREEMAN
                             United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLGER LEVIN LLP
ATTORNEYS AT LAW

-22-

JOINT PRE-TRIAL CONFERENCE STATEMENT;
CASE NO. 5:13-CV-02060-BLF